# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 13 CR 50048-2 |
| | ) | |
| Kenneth W. Mullins, | ) | |
| | ) | |
| *Defendant*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant Mullins' motion to suppress [48] is denied.

## STATEMENT

Defendant, Kenneth W. Mullins, is charged with conspiring to possess 28 grams of cocaine base, mixtures containing cocaine, and mixtures containing marijuana with intent to distribute in violation of 21 U.S.C. § 846; and possessing 28 grams of cocaine base on May 16, 2013, with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Before the court is Mullins' motion to suppress evidence. For the reasons that follow, the motion is denied.

### I. FACTS

On May 16, 2013, Deputy Kyle Boomer of the Winnebago County Sheriff's Department swore out a search warrant affidavit before the Honorable R. Craig Sahlstrom, an Associate Judge of the 17th Judicial Circuit, Winnebago County, Illinois. Deputy Boomer began his affidavit with the following language: "This affidavit is based on my personal knowledge, on my review of records and other material, including police reports obtained during the course of this investigation, as well as information provided to me [b]y other investigators." Deputy Boomer swore that:

> Since May 2013, members of the Winnebago County Sheriff's Police Narcotics Unit began receiving information from a confidential informant (hereafter referred to as CI) reference a black male known as "T" selling large amounts of cocaine and marijuana in the Winnebago County area. The CI stated "T" has an apartment in the area of Broadway Street and Alpine Road, behind BigFoot Lounge, where "T" keeps the marijuana and cocaine. The CI stated that "T" drives a black Cadillac with Minnesota registration 161EKT. A check of the Illinois Secretary of State computer shows that this registration returns to Margo Ruth Monson in Minneapolis, Minnesota on a 2008 Cadillac Escalade. The CI stated that "T" will deliver the drugs in the Cadillac Escalade.

After receiving this information from the CI, I drove to the area of the BigFoot Lounge and located a black Cadillac Escalade with Minnesota registration 161EKT parked in the parking lot of 3902 15th Avenue. This is an apartment building parking lot located directly behind BigFoot Lounge.

Since receiving information about "T" and locating the black Cadillac Escalade with Minnesota registration 161EKT in the parking lot of 3902 15th Avenue Rockford, Illinois, members of the Winnebago County Narcotics Unit have performed periodic surveillance of the apartment building and black Cadillac Escalade. During this periodic surveillance, Deputy Kaiser and I have observed a black male subject exit apartment #2 at 3902 15th Avenue and get into the driver's seat of the black Cadillac Escalade with Minnesota registration 161EKT, and drive away.

Since identifying 3902 15th Avenue #2, Rockford, Illinois as the apartment that "T" has been frequenting, members of the Winnebago County Narcotics Unit have performed periodic surveillance of the residence. During this periodic surveillance, Deputy Kaiser and I have observed multiple unknown subjects approach the front door of apartment #2 and enter the residence. The unknown subjects would remain inside of 3902 15th Avenue #2, Rockford, Illinois for approximately 3-4 minutes before exiting the door that they originally entered and immediately leaving the area. In my training and experience as a police officer the activities occurring at 3902 15th Avenue #2, Rockford, Illinois are indicative of illegal narcotic sales.

During the week of May 12, 2013, Deputy Kaiser, Deputy Jurasek and I made a controlled purchase of cannabis from the residence located at 3902 15th Avenue #2, Rockford, Illinois, utilizing a CI. This was done by meeting with the CI at a predetermined location, at which time the CI and the CI's vehicle were searched and both were found to be free of narcotics and/or United States Currency. I then provided the CI with United States Currency from the Official Advance Funds of the Winnebago County Sheriff's Narcotics Unit Funds and instructed the CI to use the funds to purchase cannabis from "T." Surveillance was established on the black Cadillac Escalade with Minnesota registration 161EKT which was parked in the parking lot of 3902 15th Avenue, Rockford, Illinois.

I had the CI call "T" and ask to purchase marijuana. "T" advised the CI that he was at his apartment and advised the CI to meet him at the Family Dollar located on Broadway. The Family Dollar is located at 3816 Broadway which is approximately 1 block from 3902 15th Avenue #2 Rockford, Illinois. I then followed the CI to the Family Dollar parking lot.

Deputy Kaiser advised that a black male exited 3902 15th Avenue #2, Rockford, Illinois and entered the driver's seat of the black Cadillac Escalade, with Minnesota registration 161EKT, and drove away from the parking lot. The Cadillac Escalade was followed with a clear and unobstructed view directly to the Family Dollar parking [lot] where he parked next to the CI's vehicle. The CI exited the CI's

vehicle, approached the driver side window of the Cadillac Escalade, and conducted a hand-to-hand transaction with the black male. The CI then returned to the CI's vehicle and left the parking lot.

The black Cadillac Escalade, with Minnesota registration 161EKT, immediately left the Family Dollar parking lot and returned directly to 3902 15th Avenue #2, Rockford, Illinois. Deputy Kaiser followed the vehicle with a clear and unobstructed view. Deputy Kaiser observed the black male exit the driver's seat and enter the residence at 3902 15th Avenue #2, Rockford, Illinois.

The black male never met with anybody else after leaving 3902 15th Avenue #2 Rockford, Illinois and never went anywhere else except the Family Dollar.

The CI was followed from the Family Dollar with a clear and unobstructed view to a predetermined location. At this time the CI handed me a clear plastic baggie filled with a green leafy substance. The CI advised that he/she had purchased the green leafy substance from the black male whom the CI knows as "T." The CI and the CI's vehicle were again searched and were free of any drugs/narcotics and US Currency.

I maintained continued custody of the suspected cannabis until I arrived at the Winnebago County Sheriff's Department where I performed a field test on a portion of the green leafy substance which resulted in a positive reaction indicating the probable presence of cannabis on the portion tested. The substance was lodged into Winnebago County Evidence.

Judge Sahlstrom found that sufficient facts were presented to establish probable cause to search 3902 15th Avenue #2, Rockford, Illinois, (hereafter "the residence") and issued the search warrant. The warrant was served the same day and police recovered approximately 626 grams of suspected marijuana, drug packaging materials, digital scales, a utility bill addressed to Mullins at the residence, approximately 16 grams of suspected powder cocaine, and more than 150 grams of suspected crack cocaine. Mullins was arrested, waived his rights, and agreed to speak to the officers. Mullins admitted that he lived in the room where the crack cocaine, cocaine, and marijuana were located. After answering a few questions, Mullins asked to speak to an attorney and questioning ceased.

## II. ANALYSIS

Mullins seeks an order suppressing the items seized from the residence contending that (1) the warrant affidavit was facially insufficient to establish probable cause to search the residence, (2) the officers could not have relied upon the warrant in good faith, and (3) Deputy Boomer intentionally or recklessly misled the issuing judge when he failed to advise that he and other officers had yet to prepare reports relating to the investigation and surveillance and failed to advise that the CI and "T" communicated through a third party. The government takes issue with each contention.

### A. Probable Cause

In deciding whether a search warrant is supported by probable cause, courts must use the flexible totality-of-the-circumstances standard set forth in Illinois v. Gates:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. 213, 238 (1983). "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." United States v. Sutton, 742 F.3d 770, 773 (7th Cir. 2014). "Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision." Id. (quotation marks omitted). Probable cause is a low evidentiary threshold, requiring only a probability or substantial chance of criminal activity, not an actual showing of such activity. United States v. Roth, 201 F.3d 888, 893 (7th Cir. 2000). Consequently, even "doubtful cases are to be resolved in favor of upholding the warrant." United States v. Sleet, 54 F.3d 303, 306 (7th Cir. 1995).

Mullins argues that the warrant affidavit was insufficient to support the probable cause finding because it failed to set out the officers' past experience with the CI or any other indication that the CI was reliable, or facts establishing the basis of the CI's personal knowledge that controlled substances were present within the residence. The court disagrees.

The Seventh Circuit has recently reiterated:

When probable cause is supported by information supplied by an informant, we particularly look to several factors: (1) the degree to which the informant has acquired knowledge of the events through firsthand observation, (2) the amount of detail provided, (3) the extent to which the police have corroborated the informant's statements, and (4) the interval between the date of the events and the police officer's application for the search warrant.

Sutton, 742 F.3d at 773. While it is true that the warrant affidavit does not reveal whether the CI gained his information based on firsthand observation or by other means, firsthand personal knowledge of actual illegal activity is not required. The standard, as noted above, is "a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. In this case, each of the other three factors weighs in favor of a finding of probable cause and, therefore, taken as a whole the Sutton factors support a probability or substantial chance of finding illegal drugs inside the residence.

The CI provided specific details with regard to "T's" distribution of marijuana and cocaine. Mullins calls these details "skimpy." However, what the details lack in quantity are made up for in quality. In particular, the CI told Deputy Boomer that a black male he knew as "T" was dealing marijuana and cocaine out of an apartment located behind the Bigfoot Lounge and uses a Cadillac Escalade with the Minnesota registration 161EKT. The third Sutton factor was particularly strong in this case because the officers were able to corroborate the details provided by the CI, thereby substantiating his reliability. See Alabama v. White, 496 U.S. 325, 329 (1990) ("Because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity."); United States v. Huebner, 356 F.3d 807, 813-14 (7th Cir. 2004); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir. 1995) ("[The tipster's] [r]eliability may be shown . . . through independent confirmation or

4

personal observation by the police."). In an effort to corroborate the information provided by the CI, the officers first performed a records check and verified that the Minnesota registration 161EKT did indeed return to a 2008 black Cadillac Escalade. Next, they located a black Cadillac Escalade with Minnesota registration 161EKT in the parking lot of the apartment building directly behind the Bigfoot Lounge. Surveillance also corroborated the CI's information that a black male drove the black Cadillac Escalade and revealed that the black male frequented apartment #2. Surveillance further corroborated the CI's information that drugs were being sold from the apartment when it revealed an unusual number of subjects visiting apartment #2 and remaining there for only 3-4 minutes before leaving which, based on Deputy Boomer's training and experience, was indicative of illegal narcotic sales. Finally, the officers corroborated the CI's information when the CI executed the controlled purchase of marijuana from "T" in the Dollar General parking lot. See United States v. McKinney, 143 F.3d 325, 329 (7th Cir. 1998) (holding that the police "boosted" the reliability of an informant who had not been used before with a controlled buy which "added great weight" to his tip).

Mullins maintains that the controlled purchase one block from the residence "does not support the conclusion or nexus that controlled substances were presently located within the residence." However, facts sufficient to support a conclusion that drugs are indeed present inside the residence are not necessary, the affiant need only present facts from which a reasonable inference of the presence of drugs may be drawn. See United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010) ("[O]ften, nothing will directly indicate that evidence of a crime will be found in a particular place. For that reason, an affidavit need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place."). The fact that "T" came directly from the residence before making the hand-to-hand delivery of marijuana to the CI and then immediately returned to the residence, together with all the other information garnered by the officers, provided a sufficient nexus between the marijuana delivered to the CI and the residence such that the issuing judge had before him all the facts that he needed to reasonably infer that there might be illegal drugs in the residence. See United States v. Wiley, 475 F.3d 908, 916 (7th Cir. 2007) ("[O]n the issue of nexus, probable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense. In the case of drug dealers, evidence is often found at their residences." (quotation marks omitted)); see also United States v. Barnes, 492 F.3d 33, 37 (1st Cir. 2007) ("[W]hen a defendant sells drugs outside his home, it is reasonable to conclude that there is evidence of his drug dealing activity in the home, particularly when the defendant is observed leaving the home immediately prior to selling drugs.").

Mullins does not specifically argue that the last Sutton factor does not weigh in favor of a finding of probable cause. The affidavit does not indicate the precise date on which the CI made the controlled purchase of marijuana, only that it occurred sometime during the week of May 12, 2013. Consequently, at most, the controlled purchase happened four days before the search warrant was requested. "[T]here is no bright line rule for determining staleness," and even a ten-day interval "is not so long as to completely dispel any belief that a search would be fruitful." Sutton, 742 F.3d at 774. Thus, the fourth Sutton factor also weighs in favor of finding probable cause.

In sum, the court is convinced that the information in the warrant affidavit, taken together, was sufficient to cause a reasonably prudent person to believe that a search of the residence would uncover evidence of illegal drug sales.

## B. Good Faith

The Supreme Court has held that evidence obtained under a facially valid search warrant that is later found to be invalid is nonetheless admissible if the executing officers acted in good faith and had an "objectively reasonable belief in the existence of probable cause." United States v. Leon, 468 U.S. 897, 926 (1984). The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good-faith exception. Id. at 922. The good-faith exception does not apply, however, where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923 (quotation marks omitted). In this case, the court does not need to address the good-faith issue at length because it has determined that the search warrant was supported by probable cause. However, the court does note that if the search warrant affidavit was somehow insufficient to support a finding of probable cause to search, the court would find that it was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

## C. Franks Hearing

Alternatively, Mullins is requesting an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Mullins contends that Deputy Boomer falsely asserted in his affidavit that the facts he was swearing to were based in part on police reports obtained during the investigation, when in fact there was only one police report prepared by Deputy Boomer indicating that on May 13, 2013, he observed a black male leave the residence and enter the Cadillac but that he was unable to follow the vehicle. Mullins maintains that this police report contradicts statements in the warrant affidavit that Deputy Kaiser observed a black male leave the residence and enter the black Cadillac Escalade before driving to the Family Dollar parking lot and delivering marijuana to the CI. Mullins also stresses that the attorney for the government has admitted that Deputy Boomer mistakenly indicated that the CI spoke directly to "T," when in fact the CI called a third party who called "T," who then told the third party to tell the CI to meet him at the Family Dollar. The government opposes the request contending that Mullins has not made the substantial preliminary showing required to obtain a Franks hearing.

To obtain a Franks hearing, "a defendant must make a substantial preliminary showing that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." United States v. Smith, 576 F.3d 762, 765 (7th Cir. 2009). Thus, even an intentionally made false statement will lead to the invalidation of a search warrant if and only if the false statement was necessary to the finding of probable cause. See Franks, 438 U.S. at 155-56. Consequently, no hearing need be held unless "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Id. at 171-72. Like a misrepresentation, an omission is "'material' only if its inclusion would upset a finding of probable cause." United States v. McDuffy, 636 F.3d 361, 363 (7th Cir. 2011).

Assuming for purposes of this analysis that Deputy Boomer intentionally claimed that there were police reports when there were not or intentionally omitted the fact that there were no police reports detailing Deputy Kaiser's observations of the controlled purchase, Mullins' argument fails the materiality requirement of the Franks inquiry. If Deputy Boomer's affidavit were revised to clarify that there were no police reports reflecting Deputy Kaiser's surveillance, Deputy Boomer still swore to these facts which, as noted above, were part of the facts amounting to a substantial chance that evidence of drug sales would be found in the residence. The court also disagrees that Deputy Boomer's report about his own observations contradicts the statements he made in the warrant affidavit about Deputy Kaiser's observations. The fact that officers may have violated a general order of the sheriff's department requiring them to prepare police reports concerning their surveillance activities may be evidence of slipshod police work, but it is not determinative of the probable cause issue. See United States v. Billian, 600 F.3d 791, 794 (7th Cir. 2010) (stating that the Fourth Amendment does not require the police to follow their own procedures or even state statutes).

The government's recent revelation that the CI and "T" communicated through a third party also fails the materiality requirement of the Franks inquiry. Mullins complains that the issuing judge was not advised that third party whose credibility, reliability, and source of knowledge were unknown, was the source of information. There is, however, no indication that the third party was the source of any information included in the warrant affidavit except for the location of the contemplated drug transaction, but that information had another source as it was quickly corroborated when the transaction occurred right where the third party told the CI to go. Therefore, had Deputy Boomer included the detail in his warrant affidavit that the communication occurred through a third party, the fact would remain that after the communication "T" left the residence and drove directly to the Family Dollar where he made a hand-to-hand delivery of marijuana to the CI. Therefore, including the detail would not have diminished the probable cause. As a result, Mullins has not made a substantial preliminary showing that Deputy Boomer's purported false statements and omissions were material. Mullins is therefore not entitled to a Franks hearing.

## III. CONCLUSION

For these reasons, Mullins' motion to suppress is denied.

Date: 6/5/2014                                          ENTER:

_____

FREDERICK J. KAPALA

District Judge

7